IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1998 SESSION



FILED

February 2, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

JORGE ARIEL SANJINES          )
                              )          C.C.A. NO. 03C01-9706-CR-00229
        Appellant             )
                              )          HAMILTON COUNTY
v.                            )
                              )          HONORABLE STEVEN BEVIL
STATE OF TENNESSEE            )
                              )          (Post Conviction)
        Appellee.             )
                              )


For the Appellant:                      For the Appellee:

Robert N. Meeks                         John Knox Walkup
P.O. Box 8086                           Attorney General & Reporter
Chattanooga, TN. 37414
(on post-conviction)                    Sandy C. Patrick
                                        Assistant Attorney General
                                        2d Floor Cordell Hull Building
                                        425 Fifth Avenue North
                                        Nashville, TN. 37243-0943

                                        William H. Cox, III.
                                        District Attorney General

                                        Rebecca J. Stern
                                        Assistant District Attorney General
                                        Third Floor, Courts Building
                                        Chattanooga, TN. 37402


OPINION FILED:_____

AFFIRMED IN PART; REVERSED IN PART

WILLIAM M. BARKER, SPECIAL JUDGE

# OPINION

The appellant, Jorge Ariel Sanjines, appeals as of right from the Hamilton County Criminal Court's dismissal of his petition for post-conviction relief. He raises the following issues for review:

(1) Whether his trial counsel provided effective assistance in preparing his defense and in advising him to enter guilty pleas;

(2) Whether the prosecution committed misconduct by withholding <u>Brady</u> evidence, interfering with defense counsels' investigation, and charging appellant with two inchoate offenses, attempted murder and conspiracy to commit murder, for the same criminal objective against Ms. Sanjines;

(3) Whether the appellant entered voluntary and knowing guilty pleas following the advice of counsel and the Rule 11 procedure;

(4) Whether the appellant was afforded due process of law by the trial court's denial of pre-trial bond, the trial court's acceptance of appellant's guilty pleas, and appellant's absence from a hearing on a pre-trial motion for continuance; and

(5) Whether the trial court lacked subject matter jurisdiction to accept appellant's guilty pleas as a result of an indictment charging the appellant with both attempted murder and conspiracy to commit murder of Gina Sanjines.[1]

The record reflects that the appellant did not raise prosecutorial misconduct (Issue 2) or due process violations pertaining to the motion for a continuance (Issue 4) in either his *pro se* or amended post-conviction petitions. The appellant has offered no reason why those issues were omitted from his petitions, and we conclude that they are waived. Tenn. Code Ann. § 40-30-206 (1995).

After a careful review of the remaining issues, we find that the appellant was improperly convicted of multiple inchoate offenses, attempted murder and conspiracy to commit murder, for the criminal conduct against his ex-wife, Gina Sanjines. Tenn. Code Ann. § 39-12-106(a) (Supp. 1994). Neither the defense nor the State considered section 39-12-106(a) when they constructed the plea agreement in this case. We conclude that the error was prejudicial and, accordingly, reverse the

---

[1]This final contention was raised in appellant's supplemental brief on appeal. The appellant did not include this issue in his post-conviction petitions. However, an issue of subject matter jurisdiction is not waivable and we will address it *sua sponte*.

conviction of attempted murder.[2]  The remaining convictions and sentences are affirmed.

## BACKGROUND

In 1995, the appellant pled guilty to the first degree murder of Virgil Schrag, attempted first degree murder of Ms. Sanjines, and conspiracy to commit first degree murder.[3]  The guilty pleas were supported by evidence that the appellant had hired one Jeremy Ingram to kill Ms. Sanjines and her then boyfriend, Mr. Schrag.  Beginning in Summer 1992, the appellant planned the murders with Mr. Ingram and Amy Marcum, both of whom were employees at appellant's restaurant.[4]  Mr. Ingram carried out the criminal plan in March 1994, by shooting both Ms. Sanjines and Mr. Schrag.  Ms. Sanjines survived the shooting with injuries; however, Mr. Schrag died almost instantly from gunshot wounds.

Pursuant to a plea agreement, the appellant was sentenced to life imprisonment with the possibility of parole for first degree murder, twenty five (25) years for attempted murder, and twenty five (25) years for conspiracy to commit murder.  The twenty five (25) year sentences for attempted murder and conspiracy were ordered to run concurrently to each other and consecutively to the life sentence.  No direct appeal was taken from the trial court's judgment.

The appellant, thereafter, filed a *pro se* petition for post-conviction relief challenging the validity of his guilty pleas and contending that his trial counsel were ineffective in failing to adequately prepare his case and in coercing him to plead guilty.  Through a newly retained counsel, the appellant filed two amended post-conviction

---

[2]The evidence was sufficient to support both the conviction of attempted murder and conspiracy. We have elected to reverse the conviction of attempted murder to remedy the error under Tenn. Code Ann. § 39-12-106(a) (Supp. 1994).

[3]The record reflects that the indictment included one count of conspiracy.  Both victims, Ms. Sanjines and Mr. Schrag, were included in that count.

[4]Both Mr. Ingram and Ms. Marcum were indicted for their respective involvement in the crimes. Pursuant to plea agreements, they entered guilty pleas and agreed to testify against the appellant.

petitions raising the above grounds for relief and further alleging that the trial court did not properly follow Rule 11 procedures at the guilty plea hearing.

At the post-conviction hearing, counsel William Ortwein and John Morgan both testified that they conducted appellant's defense in a team effort with attorney Chris Helton and investigator William Dipillo. The defense interviewed over thirty (30) potential witnesses including Jeremy Ingram, Amy Marcum, and members of appellant's family. Mr. Dipillo and Mr. Morgan met with the appellant on a weekly basis to discuss the continuing investigation and to review the evidence. The investigation entailed interviewing potential witnesses for both the State and the defense, reviewing the crime scene, and reviewing the prosecution's entire file on appellant's case.

Evidence against the appellant included statements and proposed testimony of Amy Marcum and Jeremy Ingram, implicating the appellant as a primary conspirator in the plot to kill Ms. Sanjines and Mr. Schrag. Both Ms. Marcum and Mr. Ingram entered into plea agreements with the State and planned to testify against the appellant. Other witnesses, including members of appellant's family, were prepared to testify that they had heard the appellant threaten to kill Ms. Sanjines and had heard the appellant talk to Mr. Ingram by telephone.[5]

Defense counsel were also confronted with evidence of appellant's motive to kill the victims. Prior to the shootings, the appellant and Ms. Sanjines had ended their marriage and were engaged in a heated dispute over the custody of their children. Appellant's children made statements to counsel revealing that the appellant had physically abused Ms. Sanjines in the past. Moreover, there was evidence that the appellant was angry at Ms. Sanjines because of their custody dispute and because of

---

[5]The appellant's wireless telephone records indicated that he had made several long distance telephone calls to Mr. Ingram near the time of the shooting. In addition, the appellant's son, Nicholas Sanjines, observed the appellant talk to Mr. Ingram by telephone on the day of the murder. Investigator Dipillo interviewed Nicholas for the defense.

4

her romance with Mr. Schrag. The appellant had stated that he should hire someone to kill his wife.[6]

Mr. Ortwein testified that the defense team discussed possible theories and strategies to defend the appellant against the incriminating evidence. One proposed theory was that Ms. Sanjines' family in Washington, D.C. had hired someone to commit the killings. The appellant raised that theory based upon his apparent belief that Ms. Sanjines was terminally ill and that her family wanted to end her suffering. Another proposed theory was that Ms. Marcum had orchestrated the entire murder scheme because she was in love with the appellant and wanted Ms. Sanjines out of his life. Mr. Ortwein testified that the appellant would not allow the defense to pursue any theory that further implicated Ms. Marcum in the crimes.

Both Mr. Ortwein and Mr. Morgan testified that the appellant was fully informed and involved in the development of his case. The appellant participated in discussions of the evidence and the possible strategies for dealing with the evidence. However, he did not allow counsel to negotiate a plea agreement with the prosecution until a few days before trial. Appellant's counsel testified that they strongly encouraged the appellant to plead guilty in light of the overwhelming evidence and the State's notice of intent to seek the death penalty.

The appellant was also advised to enter into a plea agreement by John Oliva, then attorney with the Capital Case Resource Center in Nashville. Mr. Oliva met with the appellant by permission and informed him of the procedures and lifestyle of prison inmates on death row. Mr. Oliva told the appellant that the chances of a death sentence in his case were great because of the incriminating evidence and the likelihood of a first degree murder conviction. The appellant indicated to Mr. Oliva that he understood the risks, but remained committed to his plea of not guilty.

---

[6]Kristine Kennedy, a potential witness for the prosecution, overheard the appellant say that he should hire someone to kill his wife. Additionally, Mr. Dipillo interviewed a friend of the appellant who stated that he and the appellant had discussed the idea of having their wives killed.

5

Defense counsel met with the appellant approximately one week before the scheduled date of trial to again advise him to plead guilty. The defense team had interviewed co-conspirators Mr. Ingram and Ms. Marcus and had obtained other evidence from their investigation. Mr. Ortwein testified that they discussed the strengths and weaknesses of the case so that the appellant could make an informed decision about pursuing a plea agreement. Counsels' advice to the appellant was to enter into an agreement and avoid a possible death sentence.

The appellant testified at the evidentiary hearing that counsel coerced him into pleading guilty because they were unprepared for trial. He stated that counsels' lack of preparation was reflected in a motion for a continuance filed shortly before the scheduled date of trial. Both Mr. Ortwein and Mr. Morgan testified that they filed a motion for a continuance in response to the surprise discovery of a tape recorded conversation between the appellant and Ms. Marcum.[7] Fearing that the tapes contained incriminating evidence, counsel sought additional time to deal with the newly discovered information.[8] The motion was denied a few days before the appellant agreed to plead guilty.

The trial court accredited the testimony of appellant's counsel and dismissed the post-conviction petitions. The trial court reviewed the record from the guilty plea hearings and found that the appellant was fully informed of his rights and the consequences of entering guilty pleas. Moreover, the court found no evidence of ineffective assistance of counsel and determined that, based upon appellant's education and position as a medical doctor, he completely understood the nature of the criminal charges, the weight of the incriminating evidence against him, and his rights associated with a jury trial.

---

[7]Ms. Marcum had surepticiously recorded her telephone conversations with the appellant while the two were in police custody. The appellant's conversations with Ms. Marcum were against the advice of his counsel.

[8]Mr. Ortwein testified that the defense team had prepared its trial strategy and had subpoenaed witnesses before the tape recordings were discovered.

**DISCUSSION**

The appellant first contends that his counsel were ineffective in failing to prepare his defense. He argues that counsel were ineffective in their: (1) failure to investigate evidence and prepare defense strategy; (2) failure to review Tenn. Code Ann. § 39-12-106, dealing with multiple convictions of inchoate offenses; (3) failure to file a motion to suppress tape recorded conversations; (4) failure to appeal the trial court's order denying pre-trial bond; and (5) failure to accurately inform appellant about the nature and consequences of his guilty pleas.

We conclude that counsel should have reviewed Tenn. Code Ann. § 39-12-106 and relied upon it in appellant's defense. The appellant was prejudiced by this error, and the conviction of attempted murder is reversed. The remaining claims of ineffectiveness are without merit.

To prevail on a claim of ineffective assistance of counsel in this proceeding, the appellant must prove by clear and convincing evidence[9] that the advice or services provided by his counsel fell below the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Furthermore, he must demonstrate prejudice by proving that, but for counsels' incompetence, he would not have pled guilty and would have insisted upon going to trial. Hill v. Lockart, 474 U.S. 52, 59 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991), *per. app. denied* (Tenn. July 1, 1991).

The appellant first argues that counsel were ineffective in failing to investigate evidence and possible defense theories. He contends that counsel coerced him into pleading guilty in part because they were not prepared for trial.

The trial court reviewed the evidence and found nothing in counsels' investigation or advice that fell below the level of competence demanded of attorneys in criminal cases. That determination is conclusive on appeal and will not be

---

[9]Tenn. Code Ann. § 40-30-210(f) (Supp. 1996).

overturned unless the evidence preponderates against the judgment. State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983). We conclude that the evidence supports the trial court's finding. Appellant's counsel conducted a thorough investigation of the case and informed the appellant about the overwhelming evidence against him. With that evidence in mind, counsel competently advised the appellant that a plea agreement was the best way to avoid a possible death sentence.

The appellant next argues that his counsel were ineffective in failing to review Tenn. Code Ann. § 39-12-106 (Supp. 1994), dealing with multiple convictions of inchoate offenses. He argues that defense counsel should have challenged the multiple count indictment under section 39-12-106(a), and prevented him from pleading guilty to attempted murder and conspiracy.

There was no basis for challenging the indictment in this case. Each count in the indictment was supported by evidence sufficient for review by a trier of fact. If the case had gone to trial, the State could have elected which of the two inchoate offenses to present to the jury.[10] Therefore, counsels' decision to focus on the possible convictions and sentences, instead of contesting the indictment, was both reasonable and competent.

The appellant, however, is correct in stating that under Tenn. Code Ann. § 39-12-106(a), he could not be convicted of both attempted murder and conspiracy for the criminal conduct against Ms. Sanjines. The text of section 39-12-106(a) reads: "A person may not be convicted of more than one (1) of the offenses of criminal attempt, solicitation, or conspiracy for conduct designed to commit or to culminate in the commission of the same offense."

The indictment in this case included three counts: (1) conspiracy to commit murder of Mr. Schrag and Ms. Sanjines, (2) attempted murder of Ms. Sanjines, and (3) first degree murder of Mr. Schrag. Appellant's counsel testified at the evidentiary

_____

[10]In addition, the State could have removed Ms. Sanjines' name from the conspiracy count and proceeded on all three counts in the indictment.

hearing that they did not rely on Tenn. Code Ann. § 39-12-106 to contest the charges against the appellant. Consequently, the appellant entered into a plea agreement that included all three counts of the indictment.

Counsel should have advised and defended the appellant under Tenn. Code Ann. § 39-12-106(a). We acknowledge that counsels' primary concern under the great weight of incriminating evidence was to avoid the death penalty. In that respect, counsel were effective and instrumental in saving appellant's life. Nevertheless, the plea agreement, as constructed by both the State and the defense, included a conviction that ran afoul of our criminal law. Tenn. Code Ann. § 39-12-106(a) (Supp. 1994). The conviction of attempted murder is, therefore, reversed.

The appellant next argues that counsel were ineffective in failing to file a motion to suppress his tape recorded conversations with Ms. Marcum. The trial court determined that appellant's counsel made a tactical decision not to file a motion to suppress after they examined the tape recordings and found them to be of limited evidentiary value. Mr. Ortwein testified that no legal ground existed to support a motion to suppress because Ms. Marcum had recorded the tapes at the request of her attorney, without coercion or involvement from the State. Appellant's counsel planned to object to the relevancy of the tape recordings if the prosecution attempted to introduce them at trial.

Counsels' decision not to file a motion to suppress must be reviewed with deference and from counsels' perspective at that time. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed. 674 (1984); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Every effort is made to avoid judging counsels' performance from hindsight; however, we must ensure that the appellant was afforded effective and competent assistance. Hellard, 629 S.W.2d at 9.

The evidence shows that counsel examined the tape recordings and found no basis or need to challenge them before trial. The recordings did not factor into appellant's decision to plead guilty and they were not used as evidence against him.

9

Under those circumstances, we conclude that the defense strategy concerning the tape recordings was not ineffective.[11]

The appellant next argues that his counsel were ineffective in failing to appeal the trial court's order denying pre-trial bond. He contends that the trial court's order discriminated against his national origin and should have been challenged by an interlocutory appeal.

The trial court denied pre-trial bond in this case based upon: (1) the court's finding that the appellant was at high risk to flee to his home country of Bolivia; and (2) the State's notice of intent to seek the death penalty upon a conviction of first degree murder. Appellant's counsel found no basis to challenge that discretionary ruling, and chose to spend their time preparing a defense to the criminal charges. We give deference to counsels' tactical decision and find no ineffectiveness. See Hellard 629 S.W.2d at 9.

The appellant also argues that his counsel were ineffective in failing to accurately inform him about the nature and consequences of his guilty pleas. He contends that counsel gave him false information about the plea negotiations and the plea agreement.

The evidence shows that appellant's counsel met with him on several occasions to discuss the ongoing plea negotiations. The appellant testified on his own behalf that counsel reviewed with him various plea options, including a possible Alford plea.[12] According to the appellant, he authorized his counsel to negotiate an agreement in which he would enter an Alford plea and avoid a possible death penalty.

---

[11]The record reflects that appellant's counsel filed a motion *in limine* to suppress a tape recorded conversation between the appellant and Mr. Ingram. The basis for that motion and the trial court's ruling were not included in the record.

[12]A defendant may enter a guilty plea and still protest his or her innocence if, within the discretion of the trial court, the plea is in the defendant's best interest. This plea is recognized as an Alford plea. See North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970); Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985).

The appellant testified that he believed he was entering an Alford plea even though the trial court never discussed such a plea with him at the Rule 11 hearing.

Appellant's counsel testified that although they discussed the possibility of an Alford plea with the appellant, they did not pursue that option during the negotiations. The evidence is unclear whether counsel proposed an Alford plea to the prosecution. However, the District Attorney testified at the evidentiary hearing that the prosecution would have rejected any proposed Alford plea in appellant's case.

Counsel testified that during the negotiations they were most concerned with the degree of punishment and the length of prison sentence. Once an agreement was reached, counsel reviewed the plea papers and the Rule 11 procedure with the appellant. Counsel testified that they never told the appellant that the agreement included an Alford plea. The appellant signed the plea papers and did not question whether he was entering an Alford plea. He pled guilty to all three counts without any mention or protest of innocence.

The trial court accredited the testimony of appellant's counsel and found that counsel provided effective assistance during the plea negotiations. We affirm that finding. State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983). The evidence shows that the appellant had various opportunities to question the plea agreement both during meetings with his counsel and during the plea hearing. The appellant did not question his guilty plea, but instead signed the plea papers after counsel informed him of the agreement and the Rule 11 procedure.

Defense counsel testified that during the negotiation process, appellant's primary concerns were the length of his sentence, the acceptance of his family, and visitation privileges for his children. Under the weight of the incriminating evidence, counsel performed reasonably in protecting the appellant's interests and in avoiding a possible death sentence. The appellant has failed to prove that his counsel were ineffective in that respect. Moreover, there has been no sufficient showing of prejudice.

11

The appellant next contends that his guilty pleas were not entered voluntarily and knowingly. He argues that defense counsel coerced him into pleading guilty, and that the trial court failed to comply with Rule 11 of the Tennessee Rules of Criminal Procedure.

The due process clause of the federal constitution requires that guilty pleas be knowing and voluntary. Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed. 274 (1969); Johnson v. State, 834 S.W.2d 922, 923 (Tenn. 1992). A defendant enters a knowing and voluntary plea when he or she understands the rights and circumstances involved and nevertheless chooses to waive or relinquish those rights. State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). There must be an affirmative showing in the record that the defendant understood his or her rights and voluntarily waived those rights by pleading guilty. Id. at 340-42.

Aside from the error under Tenn. Code Ann. § 39-12-106(a), the record shows that the appellant voluntarily and knowingly entered the plea agreement with the State. The appellant was fully informed about the charges of first degree murder, attempted murder, and conspiracy to commit first degree murder. He admitted at the evidentiary hearing that he read the indictment and signed the necessary papers before the guilty plea hearing.

At the plea hearing, the trial court followed the guidelines under Rule 11 of the Tennessee Rules of Criminal Procedure.[13] The prosecution first provided a factual basis to support appellant's guilty pleas. Both the prosecution and the defense stipulated that had the case gone to trial, the evidence would have shown that the appellant paid Mr. Ingram $10,000 dollars to kill Ms. Sanjines and Mr. Schrag. The prosecution had evidence that appellant began devising a criminal plan to kill the victims in 1992, after he and Ms. Sanjines divorced. With the assistance of Ms.

---

[13]The record contains a verbatim transcript of appellant's guilty plea hearing.

Marcum and Mr. Ingram, the appellant invoked the plan that resulted in the murder of Mr. Schrag and the injuries to Ms. Sanjines.

The trial court provided the required litany of information to the appellant, including the nature and the elements of the criminal charges, the State's burden of proof on each charge, the possible sentences for each charge, the privilege against self incrimination, the right to a trial by jury, and the right to confront his accusers. The appellant responded that he understood the criminal charges and his rights associated with a jury trial. He further stated that his counsel did everything they could have done to prepare his defense. Counsel explained to the appellant the evidence, the indictment, the plea procedures, and his constitutional rights. The appellant informed the trial court that he was of sound mind and that he had no questions or problems with the plea procedure.

The trial court reviewed the guilty plea hearing and determined that the appellant was well-educated and capable of understanding his rights, the nature of the procedures, and the consequences of entering guilty pleas. We affirm that finding.

The record shows that the appellant voluntarily entered a plea agreement to avoid the death penalty and to acquire the best possible sentence under the weight of the incriminating evidence. The plea agreement was an all-inclusive deal that mistakenly included an unlawful conviction under Tenn. Code Ann. § 39-12-106(a). Having addressed that error, we conclude that the plea agreement is otherwise valid. The appellant has failed to prove by clear and convincing evidence that his guilty pleas were unknowing and involuntary.

### III.

The appellant next contends that under Tenn. Code Ann. § 39-12-106(a) (Supp. 1994), he was improperly indicted on attempted murder and conspiracy to commit murder, relating to Ms. Sanjines. He argues that the invalid indictment deprived the trial court of subject matter jurisdiction to accept his guilty pleas.

This issue is without merit.

The record shows that the appellant did not challenge the indictment in his *pro se* or amended post-conviction petitions. He raised this issue for the first time during the evidentiary hearing and in his appeal to this Court. Nevertheless, in addressing this issue on its merits, we conclude that the indictment was valid. As previously addressed, Tenn. Code Ann. § 39-12-106(a) does not preclude a defendant from being indicted on multiple inchoate offenses for the same criminal conduct.

We otherwise find no basis for challenging the indictment in this case. Each count in the indictment was supported by evidence sufficient to present the case to the trier of fact. Under that indictment, the trial court had subject matter jurisdiction both to hear the case and to accept appellant's guilty pleas.

### CONCLUSION

Having reviewed the evidence and the plea agreement, we conclude that the plea agreement was a package deal that saved the appellant from a possible death sentence. Defense counsel were effective in investigating the evidence and in advising the appellant to plead guilty. Nevertheless, the plea agreement contains an unlawful conviction that must be redressed to comport with our criminal law. Tenn. Code Ann. § 39-12-106(a) (Supp. 1994). We, therefore, reverse the conviction of attempted murder. The remaining convictions of first degree murder and conspiracy to commit first degree murder, and the effective sentence of life imprisonment plus twenty five (25) years, are affirmed.

_____
WILLIAM M. BARKER, SPECIAL JUDGE

CONCUR:

_____
GARY R. WADE, Presiding Judge

_____
JOSEPH M. TIPTON, JUDGE

14